UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GERRY DAVID WALLS, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 98-S-0880-NE
)
CENTRAL INTELLIGENCE AGENCY, )
DIRECTOR GEORGE J. TENET, )
)
    Defendants. )

ENTERED
SEP 29 1998

## MEMORANDUM OPINION

Gerry David Walls applied for employment with the Central Intelligence Agency (CIA). He alleges that he was rejected for the position of Foreign Service Support Communications Officer on the basis of an unspecified physical disability.[1] Plaintiff's complaint contains two counts, yet the court has had difficulty determining exactly what claims, if any, plaintiff attempts to allege. The court will construe plaintiff's apparent attempt to state a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (ADA), as instead stating a claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq., inasmuch as the United States is specifically excluded from the definition of "employer" under the ADA.

This action is before the court on the motion of defendants to dismiss plaintiff's claims pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because the court

---

[1] Second Amended Complaint at (unnumbered pages) 1 ¶ 4; Plaintiff's Exhibit 8.

considered evidentiary material outside the pleadings, defendants' motion is appropriately governed by summary judgment standards. Rule 12(b)(last sentence), Fed. R. Civ. P.[2] *See also Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997):

> Whether or not a district court will utilize the 12(b)(6) standard or Rule 56 standard will depend on whether the district court considered matters outside the pleadings. Under 12(b)(6), whether a plaintiff failed to state a claim upon which relief can be granted must be ascertained from the face of the complaint. Once the court considers matters outside the complaint, the 12(b)(6) motion to dismiss converts into a motion for summary judgment. Fed. R. Civ. P. 12(b)(6). ...
>
> Additionally, before a district court may convert a motion to dismiss into a motion for summary judgment, it must notify the parties and allow the parties ten days to submit any relevant evidence and arguments in support or opposition to the merits. *Marine Coating of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir. 1986), *rev'd on other grounds*, 932 F.2d 1370 (11th Cir. 1991). However, as the panel noted in *Marine Coatings*, this Circuit has recognized an exception to the ten days notice requirement when the "parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given...." *Id.* (citing *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985)). ...

This court notified the parties of its intent to consider defendants' motion to dismiss as one for summary judgment in the submission order entered July 13, 1998 (Doc. No. 14).

---

[2] The last sentence of Rule 12(b) provides:

If, in a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

2

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its

3

burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

"*Pro se* complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Henthorn v. Department of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)(quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). Even so, "the district court 'need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations.'" *Henthorn*, 29 F.3d at 684. The Eleventh Circuit has held:

4

> [a]lthough we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, we hold that a pro se litigant does not escape the essential burden under summary judgment of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.

*Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990)(citations omitted). The Eleventh Circuit further held in *GJR Investments v. County of Escambia, Florida*, 132 F.3d 1359 (11th Cir. 1998):

> [c]ourts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. ... Yet even in a case of *pro se* litigants this leniency does not give a court license to serve as a *de facto* counsel for a party ... or to rewrite an otherwise deficient pleading in order to sustain an action.

*Id.* at 1369 (citations omitted).

With those standards in mind, the court now proceeds to summarize the undisputed facts or, if disputed, to frame them in a light most favorable to plaintiff.

## II. STATEMENT OF FACTS

Gerry David Walls attended ITT Technical Institute in Tucson, Arizona. He was approached and interviewed by a CIA recruiter, Thurlow K. Hamilton, while attending school. (Second Amended Complaint at (unnumbered pages) 2 ¶ 4.) The recruiter gave him an employment application for a position as a telecommunications officer. Plaintiff submitted the application to the CIA while still attending school in Arizona.[3] *Id.* Upon graduation in 1991, plaintiff traveled to Arlington, Virginia, for pre-employment

---

[3] The record is silent as to the exact dates plaintiff attended ITT, and when plaintiff submitted his employment application with the CIA.

5

testing and evaluation by the CIA. *Id.* Plaintiff underwent one week of testing and debriefing concerning the position of Foreign Service Support Communications Officer. *Id.* During his medical evaluation, plaintiff reported a 7% disability. *Id.*

On September 19, 1991, the Medical Director of the CIA sent plaintiff a letter concerning his medical evaluation. (Plaintiff's Exhibit 1.) In the letter, the medical director requested plaintiff to submit his past history or current medical reports concerning his seven percent physical disability. *Id.* Plaintiff forwarded the information that he had in his possession. (Plaintiff's Exhibits 3A & 3B.) Plaintiff alleges a "few weeks later" he was disqualified for employment. (Second Amended Complaint at (unnumbered pages) 2 ¶ 4.) Plaintiff claims he "requested reconsideration and sent letters and called, but no-one would give [him] any reason [for disqualification]." Plaintiff claims he was informed by the CIA he had no claim of employment discrimination because he signed a release at the time he forwarded his employment application to the CIA.[4] *Id.*

On July 27, 1995, and again on February 28, 1997, plaintiff filed formal discrimination complaints with the Department of Justice. (Plaintiff's Exhibit 4A.) In each complaint, plaintiff states the alleged discrimination occurred in September 1991. *Id.*

---

[4] Defendants have presented no evidence to contradict plaintiff's claims. Nevertheless, defendants argue in brief that all relevant records pertaining to this action has been destroyed by the CIA in accordance with a records control schedule approved by the National Archives and Records Administration (NARA). (Defendants' Brief at 10-14.) According to the NARA schedules, employment applications and related records may be destroyed after two years. (Defendants' Exhibit 2 at 5.)

6

On January 23, 1997, the Department of Justice directed a letter to plaintiff instructing him to contact an Equal Employment Opportunity (EEO) counselor at the State Department in order to file an informal grievance. (Plaintiff's Exhibit 4B.) Plaintiff contacted an EEO counselor on February 7, 1997. (Defendant's Exhibit 3.) A formal complaint of discrimination was filed by plaintiff on April 27, 1997. (Plaintiff's Exhibit 7.) His formal complaint stated he was discriminated against on December 5, 1991, and was denied employment on February 21, 1992.[5] *Id.*

In its final decision dated May 30, 1997, the CIA dismissed plaintiff's complaint for failure to timely contact an EEO counselor. (Defendants' Exhibit 3.) On June 7, 1997, the Equal Employment Opportunity Commission (EEOC) issued its final agency decision. *Id.* Plaintiff's appeal of that decision was postmarked June 24, 1997. *Id.* On January 7, 1998, the EEOC rendered an appeal decision which affirmed its prior decision holding that plaintiff had "failed to submit adequate justification for extending the applicable limitation period." *Id.* Plaintiff filed the present suit *pro se* on April 13, 1998.

### III. DISCUSSION

Serious questions have been raised by defendants as to two issues: one, whether this court is the proper venue; and two, whether plaintiff has stated a claim upon which relief can be

---

[5] Note the inconsistency between the date cited by plaintiff in his formal complaints to the Department of Justice, indicating the alleged discrimination occurred in September 1991.

7

granted. (Defendants' Brief at 14-31.) This court, however, will focus on the fundamental question of whether plaintiff's claim, if one exists, is barred as untimely. Moreover, as discussed on page one of this opinion, the court shall address plaintiff's claims as if they were based on the Rehabilitation Act of 1973.

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, proscribes discrimination by the federal government in the hiring, promotion, and other employment of individuals with disabilities. Section 501 is intended to parallel section 716 of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-16. Thus, enforcement of section 501 is left to the EEOC, and aggrieved individuals must first pursue their administrative remedies through the EEOC. See 29 U.S.C. § 794a(a)(1), providing that:

> [T]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16, including the application of sections 706(f) through 706(k)(42 U.S.C. 2000e-5(f) through (k), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. ...

Section 717 of Title VII, however, "does not set out the procedures, nor does it prescribe a limitations period for the filing of grievances by a federal employee affected by an alleged unlawful practice." *Roma-Martinez v. Runyon*, 100 F.3d 213, 216 (1st Cir. 1996). Nevertheless, Section 717 grants the EEOC authority to "issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." *Id.* (quoting 42 U.S.C. §

8

2000e-16(b)(1994)). The regulations issued by the EEOC pursuant to this authority include the time within which a complainant must contact an EEO counselor: *i.e.*, "within 30 calendar days of the date of the alleged discriminatory event."[6] That 30 day time limit could be extended in certain, limited circumstances.[7]

"Where an [applicant for employment] fails to make timely contact with an EEO counselor, as required by 29 C.F.R. § 1613.214(a)(i), and neither Section 1613.214(a)(4) nor equitable estoppel extends the 30 day limitations period, then his suit must be dismissed for failure to exhaust his administrative remedies." *Plowman v. Cheney*, 714 F. Supp. 196, 199 (E.D. Va. 1989)(citing *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969-70 (4th Cir. 1985); *Woodard v. Lehman*, 717 F.2d 909, 914-15 (4th Cir. 1983)).

These administrative remedies serve an important function in

---

[6] In 1991, at the time plaintiff alleges the discriminatory events occurred, the EEOC regulations provided the agency may accept a complaint for processing only if:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person know or reasonably should have known of the discriminatory event or personnel action.

29 C.F.R. 1614.214(a)(1)(i)(emphasis supplied). The EEOC regulations presently provide: "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. 1614.105(a)(1)(1997)(emphasis supplied).

[7] *See* § 1613.214(a)(4), providing:

[t]he agency shall extend the time limits in this section when the complainant shows that he was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.

9

the overall statutory scheme. "The 30 day rule is designed 'to insure the initiation of counseling' with the hope of achieving an informal and prompt resolution." *Plowman*, 714 F. Supp. at 199 (quoting *Theard v. U.S. Army*, 653 F. Supp. 536, 542 (M.D. N.C. 1987)). "The thirty-day regulation forces federal employees [or applicants for federal employment] to try to conciliate their grievances promptly before seeking more formal administrative relief within the agency and before the EEOC." *Runyon*, 100 F.3d at 217. "If failure to meet the 30 day deadline did not bar suit, Congress' scheme for administrative dispute resolution would be undermined." *Plowman*, 714 F. Supp. at 199 (citing *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983), and, *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)).

In the present case, far more than thirty days elapsed between plaintiff's notification of disqualification for employment with the CIA and any contact by plaintiff with an EEO counselor concerning the alleged discrimination event.[8] The issue in the instant action, therefore, is whether the tolling provisions of 29 C.F.R. § 1613.214(a)(4) operate to save plaintiff's claim. "Under [those] provision[s], the time limit is extended if plaintiff shows he was not notified of the time limits and not otherwise aware of

---

[8] Plaintiff received notice of his disqualification on December 5, 1991. (Plaintiff's Exhibit 7.) Plaintiff did not contact an EEO counselor concerning his complaint until February 7, 1997 and did not file a formal complaint of discrimination until April 27, 1997. (Defendants' Exhibit 3.) Plaintiff did, however, file formal discrimination complaints with the Department of Justice on July 27, 1995, and again on February 28, 1997, but was informed by the Department on January 23, 1997, that he must contact an EEO counselor to initiate the grievance process. (Plaintiff's Exhibits 4A & 4B.)

10

them or prevented from complying by circumstances beyond his control." *Plowman*, 714 F. Supp. at 199. The record before the court is silent as to whether plaintiff was notified of the thirty day time limit by the CIA. The court will therefore assume he was not. The question then becomes whether plaintiff was prevented from complying with the time limit by circumstances beyond his control.

Plaintiff did not present any evidence to demonstrate how the CIA prevented him from complying with the 30 day time limit nor does he give any other explanation for his over five year delay in contacting an EEO counselor.[9] Viewing the facts in a light most favorable to plaintiff, his statement expressing knowledge of the thirty day period is conclusive and therefore the thirty day time limit began to run when plaintiff was notified of his disqualification for employment.[10] "[F]ailure to contact an EEO counselor within the thirty-day period, or some valid extension allowed under the ... regulations, causes him to lose his right to pursue a later de novo action in court." *Runyon*, 100 F.3d at 217 (citing *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990); *Johnson v. United States Treasury Department*, 27 F.3d 415, 416 (9th Cir. 1994)).

---

[9] Plaintiff contends he was discriminated against in December, 1991, but did not contact an EEO counselor until February 7, 1997. Even if this court considered plaintiff's filing of his first formal discrimination complaint with the Department of Justice as an initiation of his action, this complaint was not filed until July 27, 1995, almost four years after the alleged discrimination, with no explanation for the delay.

[10] *See* Second Amended Complaint at (unnumbered pages) 2 ¶ 4.

11

Therefore, because plaintiff did not initiate any action within thirty calendar days of the alleged discriminatory event as required by 29 C.F.R. § 1613.214(a)(1)(i)(1995), his claim is time barred.[11] Accordingly, defendants' motion for summary judgment is due to be granted. An appropriate order consistent with this memorandum opinion will be issued contemporaneously herewith.

DONE this 29th day of September, 1998.

_____
United States District Judge

---

[11] Because this court has concluded plaintiff's claim is time barred based on the failure to contact an EEO counselor within thirty calendar days of the alleged discriminatory event, it is unnecessary for the court to address defendants' other statute of limitation arguments pertaining to plaintiff's failure to file this civil action in a timely manner.

12